HARRY SUGARMAN and EDWARD A. KAHN, Respondents, *v.* CATHERINE B. FRASER and ANDREW S. FRASER, Appellants.

(Supreme Court, Appellate Term, April, 1911.)

Brokers — Compensation — Performance of duty by broker — Time in which negotiations must be concluded: Bargain effected by principal or others.

> Where a broker is employed to procure mortgage loans' on real property and no limit of time for the performance is fixed in the agreement, it must be performed within a reasonable time; and,

where the closing of the transaction has been postponed from time to time for the convenience of the parties or on account of objections to the title, and on the final day fixed the borrowers fail to appear and afterwards say they do not want the money; and it appears that the brokers had produced lenders ready and able to furnish the money, they are entitled to recover their commissions for procuring the loans.

In such a case, to limit the time for performance where the borrower is willing to stand upon the soundness of his title, he should demand performance within a fixed but reasonable time.

Lehman, J., dissents.

APPEAL by the defendants from a judgment of the Municipal Court of the city of New York, borough of Manhattan, seventh district, rendered in favor of the plaintiffs.

Isidore Oshlag, for appellants.

Miller & Bretzfelder (Charles S. Sinsheimer, of counsel), for respondents.

DELANY, J.   The plaintiffs seek to recover the amount of their commissions and expenses incidental to the procuring of two mortgage loans on the property of the defendant Catherine Fraser, who in all the transactions was represented by Andrew S. Fraser, her agent.   The agreement was in writing and as follows:

"NEW YORK, *April 12th,* 1910.

" In consideration of one dollar to me in hand paid by Messrs. Sugarman and Kahn of No. 302 Broadway, Manhattan, New York City, I hereby agree to accept the loan of a first mortgage of Five thousand dollars ($5000) at 5% for three years on my property at northwest corner of 71st Street and 14th Avenue, one hundred feet by one hundred feet (100 X 100) ; also a second mortgage for $1250 for 18 months at 6% payable in installments of $500 at the end of six months from date of closing, and the balance in equal quarterly payments, and I agree to pay said Sugarman & Kahn the sum of $475 to cover all recording fees, commis-

27

sions and disbursements, etc., of every nature for placing said two mortgages. This authorization to be void unless both mortgages are placed and accepted at one time, and the acceptance must be in my hands within          days.

" It is agreed that the first mortgagee is to withhold $250 of the principal until the house on the premises is painted and put in good condition; and when this is done the $250 is to be paid to the owner upon demand.

" Dated New York, *April 12th,* 1910.

> " Catherine B. Fraser,
> " by Andrew S. Fraser.
> " Andrew S. Fraser."

The plaintiffs secured acceptance of the mortgage loans, and the Lawyers Title Company proceeded with the investigation of the title. The time for closing the transaction was set for April twenty-sixth, but for the convenience of the defendants postponed to April twenty-eighth. It then transpired that an objection was raised to the title; and, with a view to obviating this difficulty and permitting the transaction to be closed, the defendant's attorneys considered the question of law alleged to be involved and, while not conceding the tenability of the objection, endeavored to procure information and affidavits which would have undoubtedly removed all ground for contention. The importance of the time of obtaining the money was first mooted on May third, when defendants' attorneys write, " our clients insist on closing the matter at once;" but we find them on the fifth still engaged in helping to solve the difficulty and saying, " without prejudice we are trying to locate Mr. Mecke (whose written statement was required to satisfy the examiner of the title) and we will have some information to-morrow." About this time a suggestion was made that, as the Title Guarantee Company had previously passed the same title, a letter of indemnity from the company would preclude further delay. It was ascertained that this could be obtained, provided a fee for the same were paid; and defendants intimated that plaintiffs should pay the fee, stating in their letter of May fifth, " you ought to be able

to do this out of the $375 more or less that is coming to you." Plaintiffs, however, on the following day, declined and properly to bear that expense. Clearly the contention raised alone prevented the completion of the business up to this point.

The closing thereafter seemed to be in abeyance for a few days, when the objection to the title was withdrawn and on May twelfth plaintiffs fixed the next day for closing; but the defendants did not appear at the appointed time and place and several days thereafter said that they did not want the money.

In the contract no time was fixed for the performance and a reasonable time was, therefore, implied within which plaintiffs should have performed their part. The evidence in the case shows that they had lenders ready and able to furnish the money. The only testimony which bears on the time of performance is contained in the line of February third, "our clients insist upon closing the matter at once." No demand was made for a fixed time, then or thereafter.

We do not pass upon the sufficiency of the objection raised. It is well known that delays are usual in such transactions because of objections to title, sometimes tenable and sometimes untenable; and, if such negotiations are unnecessarily protracted and the borrower wishes to stand on the soundness of his title, he may demand performance within a fixed but reasonable time.

Time here was not of the essence of the contract, and the case discloses no unreasonable delay — the deterring negotiations seeming to have been conducted by acquiescence of both parties. Under the circumstances we believe that there was ample evidence to sustain the judgment of the court below.

Judgment affirmed, with costs.

HENDRICK, J., concurs.

LEHMAN, J. (dissenting.) The defendants authorized the plaintiffs to obtain a first mortgage loan for $5,000 and a second mortgage loan for $1,250 upon premises owned by

the defendant Catherine Fraser and agreed to pay them a commission of $47.5 for their services. The plaintiffs procured written acceptances of the loan. The larger loan was taken by the Lawyers Title Insurance and Trust Company, and it was arranged that the loan should close on April twenty-sixth, subsequently adjourned till April twenty-ninth. When the original date for closing was fixed, the plaintiffs testified: " Mr. Fraser wanted it to close as soon as possible." Before April twenty-ninth the Lawyers Title Company raised an objection to the title which had previously been guaranteed by the Title Guarantee and Trust Company, and a suggestion was made that the latter company, having already guaranteed the title, should give the former company a letter of indemnity. Some negotiations with the Title Guarantee and Trust Company followed. They took the position that the title guaranteed by them was good, but they would not give the Lawyers Title Insurance Company a letter of indemnity without payment. The defendants on May fifth wrote the plaintiffs, stating their position and suggesting that they pay such charges out of their commission; but the plaintiffs refused this suggestion, and no fault can be found with them for their refusal. No further communications passed between the parties until May twelfth, when the plaintiffs informed the defendants that the Lawyers Title Insurance Company would close the loan on May thirteenth. On that date the company was ready, able and willing to close the loan, but the defendants refused " as they had no further use for the money."

Upon these facts the trial justice gave judgment for the plaintiffs. The justice stated his position plainly, saying: " I don't think it is necessary to cross-examine him any more. I just want to give my opinion of this case as it stands now and hear the argument of counsel. I don't think we need any more testimony. Right now it looks to me as though the Frasers had authorized the plaintiffs to procure the loan. The plaintiffs went ahead, got the parties ready, willing and able to furnish the money; that there was a defect in the title, which, of course, was no fault of Sugarman, and that the loan was put through as soon as the

defect was cleared up; therefore, they have done all that they agreed to do, and that, while it might not have been consummated finally, they have earned their commission and they are entitled to it."

Of course, if by defect in the title the trial justice meant a defect making the title unmarketable, his view is not supported by the evidence. The testimony shows only a claim of defect, raised by one title company and denied by another and, apparently, subsequently abandoned by the first company. At most this testimony would, therefore, show a colorable claim of defect. Under such circumstances, while the plaintiffs might be entitled to commissions earned by obtaining a purchaser, they are not entitled to commissions for obtaining a loan. The distinction between the cases has been pointed out frequently by various appellate courts, the last opinion being the opinion of this court written by myself in Steele v. Lippman, 115 N. Y. Supp. 1099. "A broker has not performed his whole contract when he has secured an offer to loan upon the terms set forth by the borrower, but must *actually secure a mortgage loan* unless the loan fails through the fault of the borrower." See also Crasto v. White, 52 Hun, 473; Ashfield v. Case, 92 App. Div. 452; Duckworth v. Rogers, 109 id. 168.

There is no proof that the loan failed through the fault of the borrower; there is no evidence that the defendants' title was defective on April twenty-ninth. It is undisputed that, when they accepted the offer to loan and fixed the time for closing, they stated that they wanted to close as soon as possible. A letter from them dated May third states that they " take the position along with the Title Guarantee and Trust Company that the title is absolutely all right. At your request we will take the matter up with the Lawyers Title Company and see if they can be satisfied upon the proposition. If they have any law upon it it will do them no harm to show it. We will let you know to-morrow, but our client insists *upon closing the matter at once.*"

There is no dispute that, after May fifth, no suggestion was made that the matter was kept open, and I can, therefore, not find that their refusal to proceed on May twelfth,

after they had made other arrangements, was unreasonable. The loan, therefore, failed of consummation without fault of the defendants, and the plaintiffs are not entitled to compensation even though the failure was not due to their fault. ·

The judgment should be reversed and a new trial granted, with costs to appellants to abide the event.

Judgment affirmed.